E-FILED
Friday, 10 September, 2010  04:12:29 PM
Clerk, U.S. District Court, ILCD

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF ILLINOIS

ANDREW LAMON, )
)
Petitioner, )
)
v. )          Case No. 09-1224
)
GUY PIERCE, Warden, )
)
Respondent. )

# O R D E R

Now before the Court is Petitioner, Andrew Lamon's ("Lamon"), Petition for Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254. For the reasons set forth below, the Petition [#7] is DENIED.

## FACTUAL BACKGROUND

Following a jury trial in the Circuit Court for Peoria County, Illinois, Lamon was convicted of aggravated criminal sexual assault and unlawful possession of a controlled substance with intent to deliver. He was sentenced to an extended term of 30 years' imprisonment for the first conviction and 5 years' imprisonment on the second conviction, with the sentences to run concurrently.

Lamon appealed to the Illinois Appellate Court, arguing: (1) the evidence was insufficient to convict him of the aggravated criminal sexual assault; (2) the jurors' exposure to the newspaper article deprived him of an impartial jury; and (3) the prosecutor knowingly failed to correct false testimony by the victim. His convictions and sentences were affirmed on February 13, 2004. A Petition for Leave to Appeal ("PLA") to the Illinois Supreme Court

raising the sufficiency of evidence claim and a claim that he was denied an impartial jury was denied on May 26, 2004.

On December 13, 2004, Lamon filed a post-conviction petition in the trial court, in which he raised two claims: (1) counsel was ineffective for failing to object to the presentation of false testimony by the victim, failing to interview or call witnesses to corroborate his testimony, failing to call Bertram Goodman ("Goodman") to testify that he did not pressure the victim to recant, and failing to properly present the claims raised in his motion for new trial; and (2) the prosecutor impeached him in bad faith by suggesting that he had asked Goodman to pressure the victim to recant without corroborating evidence. The petition was denied on May 11, 2005, and Lamon appealed to the Illinois Appellate Court, arguing that trial counsel was ineffective for failing to call Goodman to testify and the prosecutor improperly suggested that he had pressured the victim to recant without providing proof.  The denial of the post-conviction petition was affirmed, and Lamon's PLA to the Illinois Supreme Court was denied on May 31, 2007.

During the pendency of his post-conviction proceedings. Lamon filed a Petition for Relief from Judgment in the trial court, contending that his conviction was void because the prosecutor committed fraud upon the Court by failing to correct false testimony by the victim or disclose a report of his investigator's interview with Goodman.  The petition was dismissed as untimely on February 6, 2006, and subsequent petitions raising similar issues were denied as well.

On July 5, 2007, Lamon filed a successive post-conviction petition in the trial court in which he argued that he was actually innocent of aggravated criminal sexual assault, based on the prosecutor's presentation of perjured testimony by the investigator.  This

petition was denied on September 13, 2007, based on the conclusion that the investigator was merely a rebuttal witness, and as such, the attack on his testimony did not advance a claim of actual innocence. Lamon appealed, arguing that the trial court erred in declining to appoint counsel to represent him in his successive post-conviction petition. The Court of Appeals affirmed the denial of the successive petition, and the Illinois Supreme Court denied his PLA on May 28, 2009.

Lamon then filed the present petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254, alleging: (1) he was denied a fair trial because two jurors were exposed to a newspaper article mid-trial; (2) the evidence was insufficient to convict him of the aggravated criminal sexual assault charge; (3) the prosecutor erred in failing to correct false testimony by the victim; (4) trial counsel was ineffective for failing to impeach the victim with evidence of her inconsistent explanations for her recantation; (5) trial counsel was ineffective for failing to call Goodman; (6) the prosecutor committed misconduct by suggesting that he had pressured the victim to recant without offering proof; (7) the prosecutor committed misconduct by failing to correct false testimony by the investigator; and (8) trial counsel was ineffective for failing to impeach the investigator. The petition is fully briefed, and this Order follows.

## DISCUSSION

Before reaching the merits of a petition for writ of habeas corpus brought pursuant to 28 U.S.C. § 2254, a district court must consider "whether the petitioner exhausted all available state remedies and whether the petitioner raised all his federal claims during the course of the state proceedings." Farrell v. Lane, 939 F.2d 409, 410 (7th Cir. 1991), *quoting* Henderson v. Thieret, 859 F.2d 492, 496 (7th Cir. 1988). If the answer to either of these

- 3 -

questions is "no," then the failure to exhaust state remedies or procedural default bars the petition.  Id.  In other words, if a petitioner fails to give the state courts a full and fair opportunity to review his claims, then his petition must fail.  Bocian v. Godinez, 101 F.3d 465, 468-69 (7th Cir. 1996).

Exhaustion of a federal claim occurs when it has been presented to the highest state court for a ruling on the merits or when it could not be brought in state court because a remedy no longer exists when the federal petition is filed.  Id.  In the present case, Respondent does not argue that Petitioner has failed to exhaust his state remedies.

Procedural default occurs when a claim could have been but was not presented to the state court and cannot, at the time the federal petition is filed, be presented to the state court.  Resnover v. Pearson, 965 F.2d 1453, 1458 (7th Cir. 1992).  This occurs in one of two ways.  First, a procedural default may occur when a petitioner fails to pursue each appeal required by state law, Jenkins v. Gramley, 8 F.3d 505, 507-08 (7th Cir. 1993), or when he did not assert the claim raised in the federal habeas petition in the state court system.  Resnover, 965 F.2d at 1458-59.  The second way in which a petitioner may procedurally default a claim is when a state court disposes of the case on an independent and adequate state law ground, regardless of whether that ground is substantive or procedural.  Coleman v. Thompson, 501 U.S. 722, 111 S.Ct. 2546, 2553-55 (1991).  Respondent asserts that several of Lamon's claims have been procedurally defaulted.

Federal review is barred for claims that are procedurally defaulted unless the petitioner can demonstrate cause and prejudice.  Engle v. Isaac, 456 U.S. 107, 102 S.Ct. 1558, 1572-73 (1982); Farrell, 939 F.2d at 411.  Review in federal court is also possible if a fundamental miscarriage of justice would otherwise occur in that a constitutional error

- 4 -

probably resulted in the conviction of someone who is actually innocent.  <u>Schlup v. Delo</u>, 513 U.S. 298, 115 S.Ct. 851, 864-67 (1995).

 I. **<u>Juror Exposure to Newspaper Article</u>**

 Lamon asserts that he is entitled to federal habeas corpus relief because he was denied a fair trial after two jurors read an article that appeared in the local newspaper following the first day of trial.  This matter was addressed by the Court of Appeals on direct review.   The Illinois Appellate Court found that not every incident of unauthorized information being considered by jurors results in prejudicial error.  <u>People v. Lamon</u>, 346 Ill.App.3d 1082, 1092.  Rather, to be actionable, a defendant must establish that: "(1) the newspaper article was prejudicial, (2) a juror was exposed to the prejudicial article, and (3) the juror's decision was influenced by the article."  <u>Id.</u>, *citing* <u>People v. Malmenato</u>, 14 Ill.2d 52 (Ill. 1958).  In making this determination, the trial judge must consider the responses of the jurors on interrogation, as well as the nature of the publicity, its content, and it's potential for prejudice.  <u>Id.</u>, at 1092-93, *citing* <u>People v. Barrow</u>, 133 Ill.2d 226 (Ill. 1989).

 The Court of Appeals found that while the trial court erred in not admonishing the jury to avoid such exposure and in reaching its ruling without even reading the article in question, Lamon failed to show that he was prejudiced, and the error was harmless.  <u>Id.</u>, at 1093.  The trial court later found that the article contained only information that the jurors were already aware of through the evidence presented at trial and properly set forth the standard required to be convicted of aggravated sexual assault.  <u>Id.</u>  Accordingly, the Illinois Appellate Court determined that the article was not prejudicial and that the jurors therefore remained impartial despite their exposure.  <u>Id.</u>

While the trial court may have failed to follow state law procedure in considering the effect of the publicity, an error under state law that does not constitute an error under clearly established federal law does not form a basis for federal habeas corpus relief. Lamon has pointed to no Supreme Court precedent mandating a contrary result.  In fact, Respondent correctly notes that in Mu'Min v. Virginia, 500 U.S. 415, 425-26 (1991), the Supreme Court rejected the suggestion that the U.S. Constitution compelled a trial court to go beyond a juror's assurances of impartiality after being exposed to pre-trial publicity to examine the content of the articles themselves.

Lamon next argues that the state courts erred in failing to apply the standard set forth in Sheppard v. Maxwell, 384 U.S. 333 (1966).  In Sheppard, the Supreme Court noted that a new trial should be ordered where publicity during the proceedings threatens the fairness of the trial.   Id., at 363.   After finding that extensive pre-trial publicity had emphasized evidence and opinions that tended to incriminate the defendant and that ongoing publicity during the trial had revealed matters discussed outside the presence of the jury, the Supreme Court concluded that the defendant was entitled to a new trial as a result of the "inherently prejudicial publicity which saturated the community. . . ." Id.

Here, unlike the situation in Sheppard, there was no saturation of adverse pre-trial publicity or articles revealing matters discussed outside the presence of the jury.  Nor would it appear that the article in question emphasized evidence that tended to incriminate Lamon.  Rather, the trial court made a finding of fact that the article essentially reiterated testimony that the jury had heard in open court during the trial and accurately stated the prosecution's burden of proof that must be met in order to obtain a conviction.  The trial court further found that both jurors were very credible and believable when they said that

- 6 -

they were not prejudiced.  These factual determinations are presumed to be correct in the absence of clear and convincing evidence to the contrary.  Mendiola v. Schomig, 224 F.3d 589, 592-93 (7th Cir. 2000).  Lamon makes no effort to present such rebuttal evidence in this case; his bald opinion and speculation to the contrary are insufficient.

Sheppard holds that due process requires that a defendant "receive a trial by an impartial jury free from outside influences" and that a trial judge "take strong measures to ensure that the balance is never weighed against the accused."  384 U.S. at 362.  The decision in Sheppard further provides that a new trial should be ordered where "publicity during the proceedings threatens the fairness of the trial."  Id., at 363.  Given the unrebutted factual findings of the state courts, the record does not demonstrate that the isolated news article threatened the fairness of the trial or deprived Lamon of his right to a trial by an impartial jury.  He has therefore failed to demonstrate that the state court's decision was contrary to or an unreasonable application of Supreme Court precedent or based on an unreasonable application of the facts, and this claim therefore fails.

## II.   Sufficiency of Evidence

Lamon next asserts that he was not proven guilty of aggravated criminal sexual assault beyond a reasonable doubt because the evidence was not sufficient to convict him. He argues that the well-established standard for evaluating a sufficiency of evidence claim set forth in Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781 (1979), has been replaced by the "substantial and injurious effect" standard enunciated in Fry v. Pliler, 551 U.S. 112 (2007).  However, Fry is not a case involving a claim that the evidence was insufficient to support the conviction, but rather discussed the standard to apply in determining whether a petitioner had established prejudice impact as a result of the state court's constitutional

error in excluding evidence in a criminal trial.  Moreover, the Supreme Court's opinion in

McDaniel v. Brown, ___ U.S. ___, 130 S.Ct. 665 (2010), makes clear that Jackson remains

the governing precedent with respect to sufficiency of the evidence claims such as the one

now before the Court.

A federal court is empowered to grant habeas relief only "if it is found that upon the

record evidence adduced at the trial no rational trier of fact could have found proof of guilt

beyond a reasonable doubt."  99 S.Ct. at 2791-92.  Congress expressly amended § 2254

to require only a deferential review for reasonableness with respect to mixed questions of

law and fact, such as Jackson claims.  Gomez v. Acevedo, 106 F.3d 192, 199 (7th Cir.

1997), *referring to* Thompson v. Keohane, 516 U.S. 99, 116 S.Ct. 457, 464 (1995).  In

considering such a claim, a court must "examine the evidence in the light most favorable

to the prosecution and determine whether any rational trier of fact could have found the

essential elements of the crime beyond a reasonable doubt."  Id. at 4, *citing* People v.

Collins, 106 Ill.2d 237, 478 N.E.2d 267 (Ill. 1985), *quoting* Jackson, 99 S.Ct. at 2789.

Here, the Illinois Appellate Court found:

> In the instant case, the evidence as a whole, viewed in the light
> most favorable to the prosecutor, sufficiently described
> [Lamon's] conduct during the commission of the offense. [The
> victim] remembered the events of the evening and the incident
> in both a chronological order and a coherent manner.  Her
> testimony revealed that [Lamon] first bound her wrists with an
> electrical cord.  He also taped her mouth shut and told her not
> to scream.  She was then beaten with a coat hanger.  As a
> result of the beating, she suffered multiple bruises on her wrists
> and cuts on [her] face and breasts.  Finally, [Lamon] forced her
> to orally copulate him, and eventually raped her anally.
>
> Although there were no independent eyewitnesses to the
> events that night, the victim's testimony was sufficiently
> corroborated by witnesses to subsequent actions and by

- 8 -

physical evidence.  Several police officers noticed bruises on [the victim's] body.  They related that she was very upset and seemed to have been crying.  Medical testimony also established that [the victim] had fresh bruises on her breast and wrist and a scratch mark on her neck.  Although each of these injuries can occur during consensual intercourse, the constellation of injuries is consistent with her claim that the sex that morning or previous evening was not consensual.

Lamon, 346 Ill.App.3d at 1088-92.  While there were certainly inconsistencies in the evidence presented at trial, the jury was in the best position to consider these inconsistencies and assess the credibility of the witnesses.  There was clearly evidence in the record that a rational jury could have found sufficient to establish the elements of an aggravated criminal sexual assault by Lamon beyond a reasonable doubt.

Lamon is essentially asking this Court to re-evaluate the credibility of the trial witnesses.  This is something a district court conducting habeas corpus review pursuant to § 2254 cannot do when assessing a sufficiency of the evidence claim.  Schlup, 115 S.Ct. at 868; United States v. Kellum, 42 F.3d 1087, 1091 (7th Cir. 1994).  In conducting this review, a court "neither weighs the evidence nor assesses the credibility of witnesses, even when the evidence at trial is totally uncorroborated."  United States v. Davis, 15 F.3d 1393, 1397-98 (7th Cir. 1994).

Upon review of the facts contained in the state court record, this Court cannot find that the state court's determination that the testimonial and medical evidence was sufficient to find beyond a reasonable doubt that Lamon had committed an aggravated criminal sexual assault against the victim exceeded the bounds of reasonableness.  Accordingly, the state court determination "must be respected--not because it is right, or because federal courts must abandon their independent decisionmaking, but because the grave remedy of

- 9 -

upsetting a judgment entered by another judicial system after full litigation must be reserved for grave occasions." Gomez, 106 F.3d at 201.  Thus, Lamon's petition for writ of habeas corpus must be denied with respect to this claim.

### III. Prosecutorial Misconduct

Lamon argues that the prosecutor engaged in misconduct when he failed to correct "perjured" testimony by the victim, failed to correct the false testimony of its investigator, Michael Hirsch, and attempted to impeach Lamon regarding whether he and Goodman had attempted to coerce the victim into recanting.  In order for his claims to be addressed in a § 2254 proceeding, a petitioner must first establish that he has fully and fairly presented his claims to the state courts by giving them a meaningful opportunity to consider the substance of any such claims in one complete round of state court review.  Harris v. McAdory, 334 F.3d 665, 668 (7th Cir. 2003), citing Chambers v. McCaughtry, 264 F.3d 732, 737 (7th Cir. 2001).

Here,  Lamon did not present his claims regarding the prosecutor's failure to correct false testimony by the victim and Inspector Hirsch.  The claim regarding the victim's testimony was presented to the Illinois Appellate Court on direct appeal but was not included in his PLA to the Illinois Supreme Court.  The claim regarding Hirsch's testimony was first presented in Lamon's successive post-conviction petition, but was not raised on appeal from the denial of that petition or in a PLA.  State courts must be properly afforded the first opportunity to address and correct any alleged violations of a prisoner's constitutional rights, and the failure to present such a claim through one full round of state court review results in a procedural default.  Cawley v. DeTella, 71 F.3d 691, 694 (7th Cir. 1995); White v. Godinez, 192 F.3d 607, 608 (7th Cir. 1999); Gonzales v. Mize, 565 F.3d

- 10 -

373, 380 (7th Cir. 2009); Harris, 334 F.3d at 668; Howard v. O'Sullivan, 185 F.3d 721, 725 (7th Cir. 1999).

Procedurally defaulted claims can be reviewed by a federal court only upon a showing of cause and prejudice or a fundamental miscarriage of justice.  Perruquet v. Briley, 390 F.3d 505, 514 (7th Cir. 2004).  Here, Lamon makes no real attempt to demonstrate cause for failing to seek review in the Illinois Supreme Court (or even to the Illinois Appellate Court with respect to the claim regarding Hirsch's testimony) after raising the claims in his initial filings.  He has likewise failed to demonstrate that he has suffered actual prejudice, as he has not presented any basis for finding that these actions worked to his actual and substantial disadvantage.

Nor does Lamon make any valid attempt to invoke the fundamental miscarriage of justice exception.  To properly invoke the narrow fundamental miscarriage of justice exception, allegations of constitutional error must be supported by new, reliable evidence that was not presented at trial.  Schlup v. Delo, 513 U.S. 298, 115 S.Ct. 851, 865 (1995).  A petitioner must then show "that it is more likely than not that no reasonable juror would have convicted him in the light of the new evidence."  Id. at 867-68; Gomez v. Jaimet, 350 F.3d 673, 679 (7th Cir. 2003).  Lamon makes no showing that he is actually innocent of the charges against him and presents no new, reliable evidence which was not presented at trial.  Lamon has therefore failed to excuse his procedural default.  Accordingly, these claims are barred from further consideration in this Court.

Lamon further contends that the prosecutor committed misconduct by his "impeachment" in suggesting that he has used Goodman as an intermediary to pressure the victim into recanting her testimony without offering any evidentiary basis for the

questions.  This claim appears to have been presented through one full round of review in

the initial post-conviction proceedings and was considered on the merits by the Illinois

Appellate Court.

The complained-of exchange during Lamon's cross-examination is as follows:

> Q.  Did you actually contact your brother-in-law in an attempt to make contact with Robin [the victim] concerning recanting her statement?
>
> A.  That's not true.  My brother-in-law is not – my brother-in-law is my ex brother-in-law.  He talked to me and to Robin.  I mean, to throw that, man, into that would be really an injustice.  Robin wrote that statement on her own.  I mean, she sat there and she told you and the jury that she wrote the statement for $700.00.  Now, I mean, let's keep this really real.  For the beating that Robin took, all the things that I did to her, I urinated on her for $700.00, she will write this statement that he didn't rape me?  Come on, man.  You can't be that stupid.
>
> * * *
>
> Q.  Is it your testimony you did not contact him in an attempt to contact Robin to write a statement to the State's Attorney's Office.
>
> A.  I've contacted B.J. a couple times about bond, okay?  That's my testimony.  No, I didn't have him as an interval to contact Robin, no.  That's my testimony.

People v. Lamon, 3-05-0374 at 5-6 (Ill.App.Ct. January 12, 2007).

In ruling on this claim of error, the Illinois Appellate Court held:

> The defendant maintains that the prosecution committed misconduct in attempting to impeach him without a good-faith basis for doing so, thus substituting innuendo and insinuation for proof.  While cross-examining a defendant about bias, corruption, or coercion may normally be conducted without extrinsic evidence being later produced, considerations of unfair prejudice and misleading the jury may require the presentation of contradictory extrinsic evidence in face of the defendant's denial of the alleged misconduct.  However, in

order for failure to complete impeachment to rise to level of reversible error, unfounded insinuation that witness is unbelievable or is lying must be substantial, repeated and definitely prejudicial.  Here, the brief questioning with regard to the defendant's brother-in-law and the victim's recantation was neither substantial, repeated, nor definitely prejudicial.  The matter was not pursued beyond the exchange noted above, and was not referred to by the prosecutor in closing argument.  Thus, the defendant has failed to make a substantial showing of a violation of his constitutional rights during his cross-examination by the prosecutor.   Dismissal of his petition without an evidentiary hearing on this basis was proper.

Id., at 6-7 (internal citations omitted).

"Inflammatory, prejudicial statements made . . . or elicited by . . . a state prosecutor, evidencing a desire to improperly prejudice the defendant, may be serious enough to warrant federal habeas corpus relief."  Rose v. Duckworth, 769 F.2d 402, 405 (7th Cir. 1985).  That being said, even if a prosecutor's comments were improper, no relief is warranted unless "the comments so infected the trial with unfairness as to make the resulting conviction a denial of due process."  Ruvalcaba v. Chandler, 416 F.3d 555, 565 (7th Cir. 2005), citing Darden v. Wainright, 477 U.S. 168, 181 (1986).  Accordingly, determining the effect of the alleged misconduct requires consideration of the acts in the context of the entire trial.  Rose, 769 F.2d at 405.

Here, the jury had already heard about the contacts between the victim and Goodman, as well as the victim's explanation of how the recantation letter was created and her reasons for doing so.  The prosecutor asked Lamon if he had contacted Goodman in an effort to have him persuade the victim to recant her statement, and Lamon responded with a reference to the victim's testimony, as well as a colorful, explicit denial.  When asked to clarify his testimony, Lamon definitively stated that he had talked to Goodman about

bond and again denied asking him to contact the victim on his behalf.  The prosecutor made no further reference to the subject, and the topic was not referred to during closing arguments.  Thus, the questioning that Lamon finds objectionable consisted of two isolated questions of dubious significance, and there was no further pursuit of the subject following Lamon's denial.  Under these circumstances, and considering the sufficient evidence presented at trial to support his conviction, the Court cannot find that the limited exchange rose to the level necessary to deprive Lamon of a fair trial or due process.  He has therefore failed to demonstrate that the state court's decision was contrary to or an unreasonable application of Supreme Court precedent or based on an unreasonable application of the facts.  Lamon is not entitled to federal habeas relief on this claim.

## IV.    Ineffective Assistance of Counsel

Lamon alleges that his trial counsel failed to impeach the victim following her false testimony that she had been pressured to recant, failed to impeach Investigator Hirsch following his false testimony with respect to the filing of a juvenile petition for her children, and failed to call Goodman to testify that he did not pressure the victim on behalf of Lamon. The first and third arguments are really two sides of the same coin.

The seminal case on ineffective assistance of counsel is Strickland v. Washington, 466 U.S. 668 (1984).  In Strickland, the Supreme Court stated that in order for a prisoner to demonstrate that counsel's performance fell below the constitutional standard, the petitioner would have to show that "counsel's representation fell below an objective standard of reasonableness." Strickland, 466 U.S. at 687-88.  A prisoner must also prove that he has been prejudiced by his counsel's representation by showing "a reasonable probability that but for counsel's unprofessional errors, the result of the proceeding would

have been different." Id., at 694. The courts, however, must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Id., at 690.

Here, Lamon did not allege that counsel was ineffective for failing to impeach Inspector Hirsch in his state court proceedings. Rather, he fully presented the claim that counsel was ineffective for failing to call Goodman to testify or offer evidence of this nature to impeach the victim.[1]  Accordingly, Lamon has procedurally defaulted his claim of ineffective assistance regarding Hirsch's testimony, as the failure to raise a particular complaint about specific aspects of counsel's performance in the state courts results in procedural default. Bradshaw v. Richey, 546 U.S. 74, 79 (2005); Stevens v. McBride, 489 F.3d 883, 894 (7th Cir. 2007).  As he makes no effort to cure his default by establishing cause and prejudice or properly invoking the fundamental miscarriage of justice exception, this claim is barred from consideration by this Court.

With respect to his claim that counsel was ineffective for failing to call Goodman to testify at trial or offer similar evidence to impeach the victim's testimony regarding her recantation, the Illinois Appellate Court clearly applied the proper standard in the form of Strickland.

> The defendant raises two issues on appeal: (1) ineffective assistance of his trial counsel in failing to properly impeach the victim; and (2) inappropriate cross-examination of the defendant.  We review de novo a trial court's second stage

---

[1]  Respondent incorrectly contends that Lamon's claim with respect to the failure to impeach the victim's testimony was not raised in the state courts. However, a review of the Illinois Appellate Court's decision, as well as the PLA to the Illinois Supreme Court, clearly belie this assertion.

dismissal of a post-conviction petition without an evidentiary hearing.

Any claim of ineffective assistance of counsel, regardless of the context in which it is raised, is reviewed using the two prong standard of Strickland v. Washington . . . . This standard requires a showing that counsel's performance was deficient and a showing of substantial prejudice, that is, a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. Both prongs of the Strickland standard are applicable to post-conviction proceedings. Since proof of prejudice is a necessary element, if prejudice is not present, it is unnecessary for a reviewing court to consider whether counsel's performance was deficient.

The defendant alleges that his trial counsel was ineffective in failing to impeach the victim after she alleged that Butch (Goodman) and the defendant pressured her into recanting. In support of his contention, the defendant relies upon a report prepared by Hirsch. In that report, Hirsch notes that Goodman told him that the victim, not the defendant, asked him to send the letter to the State's Attorney. The defendant maintains that his counsel was deficient in failing to call Goodman to testify, and to examine Goodman using Hirsch's report.

We find that trial counsels failure to call Goodman to testify was not deficient performance, nor would it have changed the outcome of the trial. The victim's testimony was consistent on at least two points: that the defendant pressured her into writing the recantation letter and that Goodman delivered the recantation letter to the State's Attorney's office. There is no admitted testimony that Goodman played any role in the drafting of the letter. Thus, trial counsel's failure to call Goodman to testify in order to deny that he told the victim what to say in the recantation letter was not deficient, since the victim had never made that claim. The victim's testimony was that the letter was in her own words written as a result of pressure by the defendant. Testimony from Goodman would have had no impact on the victim's testimony. At best, Goodman could have testified that he did not pressure the victim into writing the letter, a fact which was not in issue. We find that the defendant has failed to demonstrate ineffective assistance such that an evidentiary hearing was warranted. Accordingly, we find no abuse of discretion in the trial court's

granting the People's motion to dismiss this allegation without conducting an evidentiary hearing.

People v. Lamon, 3-05-0374 at 3-5 (Ill.App.Ct. January 12, 2007).

The victim testified regarding the circumstances of her recantation, and the arguably inconsistent explanation that she gave to Inspector Hirsch, as reflected in his report, was introduced at trial through Hirsch's testimony. The failure to elicit certain testimony is not prejudicial when the substance of such testimony is effectively introduced through other witnesses. United States v. Weaver, 882 F.2d 1128, 1136 (7th Cir. 1989). The State properly notes that the victim's inconsistent explanations were both before the jury for consideration in their assessment of her credibility and inquiring into this inconsistency on cross-examination would have given the victim the opportunity to explain them in a way that could have reconciled the two explanations. Lamon cannot reasonably suggest that this possibility would have been more favorable to him than leaving the jury with the unrebutted impression that the victim had given two inconsistent explanations for her behavior.

Moreover, as reflected in the transcript of the argument before the trial court in connection with this issue, Lamon's counsel clearly couched the claim in terms of whether counsel was ineffective for failing to call Goodman to correct the insinuation made during the victim's testimony to the effect that Goodman had helped the victim write her letter of recantation. (Transcript of April 29, 2005, Hearing, at 3-4). However, the victim testified that she wrote the letter herself in her own words, so the evidence of record did not indicate that Goodman had helped prepare the letter itself.

"Usually, counsel's decision not to call a witness is a tactical choice not subject to review." Barnhill v. Flannigan, 42 F.3d 1074, 1078 (7th Cir.1994). Generally, a petition for

- 17 -

habeas corpus relief based on counsel's failure to call witnesses must present evidence in the form of an affidavit or other actual testimony by the witness.  United States v. Ashimi, 932 F.2d 643, 650 (7th Cir.1991).  Here, there is no affidavit from Goodman; the only indication of Goodman's potential testimony would be what is reflected in Inspector Hirsch's report of his interview with Goodman.  The report reflects Goodman's statement that he did not help the victim write the recantation letter, which had already been established by the victim's testimony.  Beyond that, Lamon's general conclusion as to Goodman's potential testimony, without more, is speculative, and fails to support a finding of ineffective assistance. *See* United States v. Muehlbauer, 892 F.2d 664, 669 (7th Cir.1990).

Lamon has failed to introduce evidence sufficient to overcome the presumption that counsel's strategy was sound or to demonstrate that he suffered actual prejudice as a result of counsel's performance.  He cites to no clearly established law of the Supreme Court compelling a different result; his reliance on "contrary state law precedent" is unavailing.  There is no basis to find that the Appellate Court's conclusion that counsel's decision to forego calling Goodman as a witness was a matter of sound trial strategy was unreasonable.

### V.    Appellate Court Error

Finally, Lamon argues that the Appellate Court erred in reaching the conclusions that it did on direct appeal and appeal from the denial of his first post-conviction petition.  In this claim, he is essentially expressing his disagreement with the holdings of the state courts based on his own views regarding how the evidence should have been interpreted.  That being said, as the Court has found no merit in his substantive claims themselves, his

assertion that the state courts erred in denying his substantive claims does not entitle him to federal habeas relief.

### VI.    **Certificate of Appealability**

To obtain a certificate of appealability (CA), a petitioner must make "a substantial showing of the denial of a constitutional right." 28 U.S.C § 2253(c)(2).  The petitioner must also show that "jurists of reason would find it debatable whether the district court was correct in its procedural ruling."  Slack v. McDaniel, 529 U.S. 473, 484 (2000).  "Where a plain procedural bar is present and the district court is correct to invoke it to dispose of the case, a reasonable jurist could not conclude either that the district court erred in dismissing the petition or that the petitioner should be allowed to proceed further."  Id.

Here, no reasonable jurist could conclude that many of Lamon's habeas claims were not procedurally defaulted.  For the reasons stated above, a "plain procedural bar" exists because he did not present his constitutional claims through one complete round of the state appellate process as required by the Supreme Court.  O'Sullivan, 526 U.S. at 845.  Furthermore, on claims that were properly preserved for federal review, Lamon has not made a showing of a denial of a constitutional right.  Accordingly, this Court will not issue Lamon a certificate of appealability.

**CONCLUSION**

For the reasons set forth herein, Lamon's Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 [#7] is DENIED.  This matter is now terminated.

ENTERED this 10th day of September, 2010.


                                          s/ Michael M. Mihm
                                          Michael M. Mihm
                                     United States District Judge